UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT C. WILLIAMS,<br><br>           Plaintiff,<br><br>    v.<br><br>R. CASANOVA, et al.,<br><br>           Defendants. | Case No. 1:17-cv-00917-JLT (PC)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 51) |

Robert C. Williams, a former civil detainee at Coalinga State Hospital, alleges that four psychiatric technicians at the hospital failed to protect him from an attack by Patient Corey Bell on October 26, 2015, in violation of the Fourteenth Amendment. Before the Court is Defendants' motion for summary judgment. (Doc. 51.) Defendants argue that summary judgment is proper because Plaintiff presents no evidence that they had "information from which they could reasonably infer that … Bell posed a substantial risk of harm to Plaintiff." (*Id.* at 2.) Plaintiff filed an opposition to Defendants' motion (Doc. 56), to which Defendants filed a reply (Doc. 57).[1] The parties previously consented to the undersigned's jurisdiction over all proceedings in this matter pursuant to 28 U.S.C. § 636(c). (Docs. 8, 27.) For the reasons set forth below, the Court grants Defendants' motion.

---

[1] Plaintiff filed a "reply" to Defendants' reply on May 27, 2020. (Doc. 59.) The Local Rules do not authorize the non-moving party to file a response to the moving party's reply. *See* Local Rule 230(l). Therefore, the Court does not consider Plaintiff's reply (Doc. 59).

## I. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of his pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.

2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., that it might affect the outcome of the suit under governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., that the evidence is such that a reasonable jury could return a verdict for the non-moving party, *see Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In attempting to show a factual dispute, the opposing party need not prove a material fact conclusively in her favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). However, the opposing party must still produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

II.   **EVIDENTIARY MATTERS**

   **A.  Plaintiff's Objections**

Plaintiff makes several evidentiary objections in his opposition to Defendants' motion. First, he objects to Defendants' use of his deposition transcript. (Doc. 56 at 33.) Plaintiff argues that the use of the transcript is improper because Defendants attached only selected portions of the transcript to their motion. (*See id.*)

1    Plaintiff provides no authority, and the Court is unaware of any, that requires a party to
2    attach the entire transcript of a deposition in order to reference it in a motion. On the contrary, the
3    Local Rules specifically state that "[d]epositions shall not be filed through CM/ECF," and only
4    "[p]ertinent portions of the deposition intended to become part of the official record shall be
5    submitted as exhibits in support of a motion." Local Rule 133(j). In addition to attaching the
6    relevant portions of the deposition to their motion, Defendants lodged a courtesy copy of the
7    entire transcript with the Court (*see* Doc. 52), as required by Local Rule 133(j). Thus, the
8    objection is OVERRULED.

9    Plaintiff also objects to Defendants' use of Defendant Chase's requests for admission, set
10   one. (Doc. 56 at 35.) Plaintiff never responded to the requests for admission, and therefore the
11   matters are deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3). Plaintiff
12   contends that during his deposition, he and defense counsel stipulated to allow Plaintiff to
13   withdraw his admissions. (*See id.*) Defendants counter that "Plaintiff blatantly misrepresents the
14   parties' discussion at his deposition," and that defense counsel offered to orally take Plaintiff's
15   responses to Defendants' requests for production, not his requests for admission. (Doc. 57 at 5-6.)
16   According to Defendants, counsel withdrew this offer once it became apparent that Plaintiff was
17   not prepared to respond to the production requests at his deposition. (*See id.*)

18   A review of the deposition transcript reveals that Defendants' version of the parties'
19   conversation is the correct one. *See* Pl.'s Dep. 11:4-13-7, 96:14-99:13. Thus, the objection is
20   OVERRULED.

21   Plaintiff also objects to Defendants' use of two other exhibits. (Doc. 56 at 34.) The Court
22   does not rely on either in ruling on Defendants' motion. Therefore, the Court does not address
23   Plaintiff's remaining objections.

24   **B. Sham Declaration**

25   Plaintiff does not offer any evidence apart from his opposition and operative complaint.
26   (*See* Doc. 56 at 2.) Because Plaintiff is *pro se* and attests under penalty of perjury that the
27   contents of his opposition and complaint are true and correct, the Court considers as evidence
28   those parts of the documents that are based on Plaintiff's personal knowledge. *See Jones v.*

4

*Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). For purposes of this summary judgment motion, the Court construes Plaintiff's opposition as a declaration.

The Court is not, however, required to give credence to those parts of Plaintiff's opposition and complaint that are not based on Plaintiff's personal knowledge, *cf. id.*, or that are flatly contradicted by his deposition testimony or video footage of the incident, *see Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012); *Scott v. Harris*, 550 U.S. 372, 378 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380 (concluding that, when plaintiff's version of the facts was clearly discredited by video, the court should not have relied on that version of events and should have instead viewed the facts as depicted by the video). Additionally, under the "sham affidavit rule," "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager*, 693 F.3d at 1080 (internal quotation marks and citations omitted). "[T]o trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* (internal quotation marks and citations omitted).

The Court makes such a factual finding: Plaintiff's opposition, construed as a declaration, is clearly and unambiguously contradicted by Plaintiff's deposition testimony and video footage of the incident and is, therefore, a sham. For example, in his declaration, Plaintiff states that he "never inter-acted [sic] with Patient Corey Bell on any social … level … before the one … time that transpired on October 26, 2015." (Doc. 56 at 15.) However, in his deposition, Plaintiff testified that he played dominoes or card games with Bell about once per week. Pl.'s Dep. 39:6-16 (Doc. 51-7, Esquivel Decl. Ex. E). In his declaration, Plaintiff states that Bell was transferred to Unit 9 of Coalinga State Hospital for assaulting two patients (besides himself). (Doc. 56 at 5, 7-8.) In his deposition, Plaintiff testified that he is not claiming Bell assaulted more than one patient (besides himself). *See* Pl.'s Dep. 43:22-45:16. In his declaration, Plaintiff states that Bell is a "notorious Bay Area Crip" and that he is a "notorious … South Blood," which made the two

1    "known enem[ies]." (Doc. 56 at 15, 16.) In his complaint and deposition, Plaintiff never mentions
2    his or Bell's gang affiliation or bases any safety concerns on such affiliation; he instead bases his
3    concerns on Bell's allegedly "hostile, dangerous and assaultive" nature. (*See, e.g.*, Doc. 17 at 4.)
4    In his declaration, Plaintiff states that Patient Tyrone Outlaw asked him to substitute in for a game
5    of dominoes (which immediately preceded Plaintiff's fight with Bell) while Outlaw used the
6    restroom. (Doc. 56 at 19.) In his deposition, Plaintiff testified that Outlaw was playing video
7    games or watching movies in the "TV room" at this time. Pl.'s Dep. 67:20-24, 68:22-69:5. In his
8    declaration, Plaintiff states that, after he and Bell began to argue, he "attempted to flee the
9    dayroom." (Doc. 56 at 20.) Video footage of the the incident shows Plaintiff walk away from
10   Bell, then walk back *towards* Bell, three times before Bell punched him; it does not show Plaintiff
11   attempting to flee. Video from Unit 9 Dayroom Camera ("Video") 0:24-1:14 (Doc. 51-7,
12   Esquivel Decl. Ex. C). In his declaration, Plaintiff states that after Bell punched him, Bell
13   "continue[d] his violent assault, even while the plaintiff pose[d] no immediate threat (on the floor
14   unconscious)." (Doc. 56 at 27.) The video footage shows Bell, after punching Plaintiff and
15   kicking him once, retreat behind a chair, then Plaintiff immediately get up, walk up to Bell, and
16   assume a boxing stance in an apparent effort to resume the fight. Video 1:14-1:36.

17        Because Plaintiff's declaration is a sham, the Court does not consider those parts of the
18   declaration that are contradicted by Plaintiff's deposition testimony or video footage of the
19   incident. The Court notes that parties are "not precluded from elaborating upon, explaining or
20   clarifying prior testimony elicited by opposing counsel on deposition" in an affidavit or
21   declaration. *Messick v. Horizon Indus. Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995) (citation omitted).
22   "[M]inor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered
23   evidence afford no basis for excluding an opposition affidavit." *Id.* (citation omitted). But this is
24   not the case here. The discrepancies between Plaintiff's declaration on the one hand and his
25   deposition and video footage on the other are not minor, and Plaintiff makes no attempt to explain
26   these discrepancies. The Court, therefore, "must regard the differences … as contradictions."
27   *Yeager v. Bowlin*, No. 2:08-00102-WBS-JFM, 2010 WL 95242, at *5 (E.D. Cal. 2010); *see also*
28   *Yeager*, 693 F.3d at 1081.

### III.    SUMMARY OF RELEVANT FACTS

For the reasons above, the Court disregards those portions of Plaintiff's complaint and declaration that are not based on Plaintiff's personal knowledge, as well as those portions of the declaration that are contradicted by Plaintiff's deposition testimony or video footage of the incident. With these qualifications, the following facts are uncontested unless otherwise stated:

On October 26, 2015, Plaintiff was civilly detained at Coalinga State Hospital and housed in Unit 9, a unit that "housed patients who required a higher level of care and staff intervention for behavioral issues, such as fighting." Defs.' Statement of Undisputed Facts ("SUF") ¶¶ 1, 7 (Doc. 51-2). The four defendants were psychiatric technicians in Unit 9. *Id.* ¶ 2.

Plaintiff played cards or dominoes with Patient Corey Bell approximately once per week. Pl.'s Dep. 39:9-16. According to Defendants, Plaintiff had no safety concerns regarding Bell prior to October 26, 2015. SUF ¶ 4. Plaintiff, though, contends that he expressed safety concerns to his clinician, Dr. Resley, because Bell posed a security threat by virtue of being in Unit 9. Pl.'s Dep. 39:23-40:18. Plaintiff never expressed such concerns to the defendants, and the defendants had no knowledge of any such concerns. SUF ¶ 5. Defendants Casanova, Chase, and Montijo had observed Plaintiff and Bell playing cards, dominoes, or boardgames in the dayroom or playing basketball or working out together in the yard. Casanova Decl. ¶ 3 (Doc. 51-3); Chase Decl. ¶ 9 (Doc. 51-4); Montijo Decl. ¶ 6 (Doc. 51-5). Defendants also "had no knowledge that Bell was a 'hostile, dangerous, and assaultive patient.'" SUF ¶ 34.

Unit 9 differed from other units at Coalinga State Hospital in a number of respects. For example, police officers were stationed in the unit and regularly patrolled the hallways and common areas. *Id.* ¶ 9 Surveillance cameras were placed throughout common areas, and live footage from the cameras was displayed on monitors in the nurse's office. *Id.* ¶ 10. No specific staff member was assigned to watch the monitors, although staff assigned to the nurse's office were expected to regularly view the footage. *Id.* Unit 9 also had nine to fifteen patients at any given time, compared to up to fifty patients in other units of comparable size. *Id.* ¶ 11.

At around 5:00 pm on October 26, 2015, Plaintiff was playing dominoes with Bell and other patients in the dayroom. *Id.* ¶ 14; *see also* Pl.'s Opp'n 19 (Doc. 56). Before this, Plaintiff

states that he saw Defendants Chase and Montijo watching a movie on a computer in the nurse's office, and he heard Defendants Casanova and Obioha playing ping-pong in the recreational room. Pl.'s Opp'n 17, 19-20. Casanova states that he was in the nurse's office preparing to serve the evening meals, Casanova Decl. ¶¶ 4, 15, and Chase states that he was in the "medication room" as assigned, Chase Decl. ¶¶ 2-3. Montijo states that he was playing ping-pong with a patient in the "rehabilitation room," Montijo Decl. ¶ 2, and Obioha states that he was in the nurse's office, Obioha Decl. ¶ 2 (Doc. 51-6). Obioha asserts that he does not recall what he was specifically doing, but he was normally preparing to serve meals or medications at this time. *Id.*

At the conclusion of the game of dominoes, Bell and Plaintiff began to argue. SUF ¶ 15. At one point, Bell punched Plaintiff, knocking him to the ground, and kicked him once. *Id.* ¶¶ 18-19; Video 1:15-1:18. Plaintiff immediately got up as Bell retreated. SUF ¶¶ 19-20; Video 1:18-1:26. Plaintiff walked back up to Bell and assumed a boxing stance. SUF ¶¶ 20-21; Video 1:18-1:36. Bell then tackled Plaintiff onto a couch and began to punch Plaintiff. *See* SUF ¶¶ 21-22; Video 1:37-1:43. The two wrestled and knocked over the couch. SUF ¶ 22; Video 1:44-1:46. Hospital staff, including police officers and Casanova, Chase, and Obioha, came into the dayroom and broke up the fight. SUF ¶¶ 23-25, 27; Obioha Decl. ¶ 6. Approximately 30 seconds elapsed between the start of the fight and initial staff intervention. *See* Casanova Decl. ¶ 10; Video 1:14-1:50. Montijo arrived after Bell and Williams had already been separated. SUF ¶ 28. Plaintiff states that he suffered a broken nose as a result of the incident. Pl.'s Opp'n 22, 23.

**IV.   DISCUSSION**

The operative claims in this matter are for violations of Plaintiff's constitutional right to be protected from harm by other detainees. (Doc. 18 at 5-7.) The Court disregards the contentions and arguments in Plaintiff's opposition that are unrelated to these claims.

To determine whether a civil detainee's conditions of confinement satisfy the Constitution, courts look to the substantive due process component of the Fourteenth Amendment. *See, e.g.*, *Jones v. Blanas*, 393 F.3d 918, 931-32 (9th Cir. 2004); *Youngberg v. Romeo*, 457 U.S. 307, 314-16 (1982). Civil detainees, like pretrial detainees, "retain greater liberty protections than individuals detained under criminal process" or after criminal conviction.

*Jones*, 393 F.3d at 932 (citations omitted). Moreover, individuals have a fundamental right to personal security, "[a]nd that right is not extinguished by lawful confinement." *Youngberg*, 457 U.S. at 315 (citations omitted). Thus, officials at civil commitment facilities, like prison and jail officials, have a duty to protect detainees from violence at the hands of other detainees. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Youngberg*, 457 U.S. at 321; *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016); *Jones*, 393 F.3d at 931-32.

To state a Fourteenth Amendment failure-to-protect claim, a plaintiff must show:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[] on the facts and circumstances of each particular case." *Id.* (internal quotation marks and citations omitted).

To establish a failure to protect under the Fourteenth Amendment, as opposed to the Eighth Amendment, a plaintiff need not prove that the defendant was subjectively or actually aware of the level of risk. *Id.* (citation omitted). The plaintiff need only show that a "reasonable officer in the circumstances would have appreciated the high degree of risk involved and that the officer['s] failure to take reasonable measures to protect [the plaintiff] caused his injuries." *Id.* at 1072. At the same time, mere negligence does not violate the Constitution. *Id.* at 1071 (citations omitted). A plaintiff "who asserts a due process claim for failure to protect [must] prove more than negligence but [something] less than subjective intent—something akin to reckless disregard." *Id.*

Based on the uncontested facts, Plaintiff does not meet this standard. Though Defendants were aware that Bell had been placed in Unit 9 for assaulting one other patient (as Plaintiff had been), "[n]othing in Bell's disciplinary or behavioral history indicated that … he had a propensity for assaulting patients." SUF ¶¶ 35-36. Plaintiff never expressed any safety concerns regarding

9

Bell to the defendants, and the defendants were not aware of any such concerns. SUF ¶ 5. On the contrary, Defendants saw Plaintiff regularly playing dominoes, cards, boardgames, or basketball with Bell. Casanova Decl. ¶ 3; Chase Decl. ¶ 9; Montijo Decl. ¶ 6. Plaintiff admits that he played dominoes or cards with Bell about once per week. Pl.'s Dep. 39:9-16.

Given these facts, there is insufficient evidence that there was a substantial risk that Plaintiff would suffer serious harm at the hands of Bell while playing dominoes on October 26, 2015. Even if there were such a risk, there is insufficient evidence that a reasonable official under the circumstances would have appreciated that risk. In other words, the consequences of Defendants' conduct were not obvious.

The Ninth Circuit case of *Castro v. Cty. of Los Angeles* provides a useful comparison. The Court of Appeals summarized the facts of that case as follows:

> The individual defendants knew that Castro, who had been detained only for a misdemeanor, was too intoxicated to care for himself; they knew that Gonzalez, a felony arrestee, was enraged and combative; they knew or should have known that the jail's policies forbade placing the two together in the same cell in those circumstances; and they knew or should have known that other options for placing them in separate cells existed…. Solomon failed to respond to Castro's banging on the window in the door of the cell. Jail video of the hallway showed Castro pounding on his cell door for a full minute, while Solomon remained unresponsive, seated at a desk nearby. Solomon failed to respond fast enough to Gonzalez' inappropriate touching of Castro.

*Castro*, 833 F.3d at 1073.

In the present case, there is no evidence that Plaintiff was especially vulnerable vis-à-vis Bell. (Each patient had been placed in Unit 9 for assaulting one other patient.) Aside from the one assault for which Bell was placed in Unit 9, there is no evidence that Defendants knew Bell was especially combative in general or with Plaintiff in particular. (With respect to Plaintiff in particular, there is significant evidence to the contrary). There is no evidence that Defendants violated hospital policy or that officials failed to regularly monitor video footage of the dayroom. There is no evidence that Plaintiff attempted to alert Defendants or leave the dayroom once he and Bell began to argue or fight. (On the contrary, video shows that Plaintiff resumed fighting with Bell after Bell retreated.) There is no evidence that Defendants failed to immediately respond once a problem became apparent.

The Court need not consider whether the defendants acted negligently because negligence or "mere lack of due care by a state official does not deprive an individual" of his rights under the Constitution. *Castro*, 833 F.3d at 1071 (internal quotation marks and citations omitted). Based on the uncontested facts, it is clear that Defendants' conduct was not "more egregious than mere negligence." *Castro*, 833 F.3d at 1071 n.4; *cf. Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1076 (9th Cir. 2013) ("triable issue of fact as to whether the withdrawal of all floor staff … for up to three and a half hours created an objectively substantial risk of harm to the unsupervised inmates"). To establish a violation of the Fourteenth Amendment, Plaintiff must show that (1) the defendants' actions placed him at *substantial* risk of *serious* harm and (2) a reasonable official in the defendants' circumstances would have appreciated that risk. There is simply inadequate evidence to make that showing.

Defendants also argue that they are entitled to qualified immunity. (Doc. 51-1 at 10-12.) Because the Court finds that Plaintiff's constitutional rights were not violated, the Court does not address the matter of qualified immunity or whether Plaintiff's rights were clearly established.

## V.  CONCLUSION AND ORDER

Based on the foregoing, summary judgment is appropriate. Accordingly, the Court ORDERS:

1. Defendants' motion for summary judgment (Doc. 51) is GRANTED; and,
2. The Clerk of the Court is DIRECTED to enter judgment and to close this case.

IT IS SO ORDERED.

Dated:   **June 7, 2020**                             **/s/ Jennifer L. Thurston**
                                                                       UNITED STATES MAGISTRATE JUDGE